UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

NANCY ALYWAHBY,                      MEMORANDUM & ORDER

               Plaintiff,

                                                                       01-CV-6512 (NGG)(LB)
      -against-                                              01-CV-8017 (NGG)(LB)
                                                                       04-CV-2183 (NGG)(LB)

ERIC K. SHINSEKI, Secretary of
Veterans Affairs

               Defendant.
----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

In these consolidated cases, pro se Plaintiff Nancy Alywahby ("Plaintiff" or "Alywahby") has sued the Secretary of Veterans Affairs, Eric K. Shinseki ("Defendant"),[1] for employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). Alywahby alleges that Defendant took various adverse actions against her in retaliation for complaints that she filed with the Equal Employment Opportunity Commission ("EEOC"), and on account of her gender, race, age, and color. (See Alywahby v. Shinseki, No. 01-CV-6512 (NGG)(LB) (E.D.N.Y.) ("Alywahby I"); Alywahby v. Shinseki, No. 01-CV-8017 (NGG)(LB) (E.D.N.Y.) ("Alywahby II"); Alywahby v. Shinseki, No. 04-CV-2183 (NGG)(LB) (E.D.N.Y.) ("Alywahby III").) Defendant has moved for partial summary judgment, asserting that eleven of the actions relied upon by Plaintiff are not "adverse" under Title VII or the ADEA. (See Docket Entry # 63.)[2] For the reasons that follow,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Shinseki is automatically substituted in place of his predecessor, James B. Peake.

[2] Citations to the docket sheet refer to Alywahby I unless otherwise noted.

1

the court concludes that several of the challenged actions are not adverse under the summary judgment standard, but that others are. Accordingly, the Motion for Partial Summary Judgment is GRANTED IN PART AND DENIED IN PART.

I.  **BACKGROUND**

Plaintiff is a nurse practitioner who was employed by the Department of Veteran's Affairs ("VA"). (See Defendant's Statement Pursuant to Local Rule 56.1 (Docket Entry # 64) ("56.1 Statement") ¶¶ 1-10.) She began work at the VA in 1985 as a staff nurse/nurse practitioner at the "Brooklyn campus" of the "VA Medical Center – Brooklyn" ("VAMC"). (See Declaration of Amanda Burns (Docket Entry # 66) ("Burns Decl.") ¶ 2.) In 1990, she was transferred to the "St. Albans campus" of the VAMC. (Id. ¶ 4.) In 1991, she requested and was approved for a part-time, 24-hour-per-week work schedule. (Id. ¶ 6.) Over the next several years she received pay increases from the VA. (See id. ¶¶ 7-13.) In August 2003, Plaintiff was reassigned back to the "Brooklyn campus." (Id. ¶ 13.) Plaintiff has not been employed as a nurse practitioner for the last five years. (See Tr. dated Oct. 17, 2008 ("Tr."), at 9.)

Plaintiff asserts claims based on events occurring from 1996 through 2003. According to Plaintiff, she contacted an EEOC counselor in May 1996 to complain about racial discrimination by Dr. Roger Boykin, the Associate Chief of Staff at the St. Albans campus. (See Plaintiff's Statement in Opposition to Defendant's Motion for Summary Judgment (Docket Entry # 82) ("Pl. Opp.") 6; see also Declaration of Roger Boykin, M.D. (Docket Entry # 68) ("Boykin Decl.") ¶ 1.) She asserts that Dr. Boykin would "issue unfair assignments" favoring African-American nurse practitioners, and that Dr. Boykin took measures to have her fired. (See Pl. Opp. 6; see also Consolidated Joint Pretrial Order (Docket Entry # 53) 2 ¶ 1.) Plaintiff pursued further contact with an EEOC counselor in November 1996, and subsequently filed a formal EEOC

2

complaint in January 1997, asserting various retaliatory actions in response to her EEOC activity. These include harassment, change in assignment, and lowered performance ratings. (See Declaration of Jeannine Burton (Docket Entry # 71) ("Burton Decl.") ¶ 3 & Ex. A.) Plaintiff's EEOC claims were ultimately denied at the administrative level, and they form the basis of her complaint in Alywahby I. (See 56.1 Statement ¶¶ 40-42.)[3]

In September 1999, Alywahby again contacted an EEOC counselor, and filed a formal EEOC complaint in October 1999. (See Burton Decl. ¶ 8 & Ex. C.) Alywahby asserted various instances of retaliation for her EEOC activity, including lowered performance evaluations, a training request denial, and a further reassignment of work duties. (See Burton Decl. Exs. C, D, E.) This administrative complaint was ultimately denied, and it forms the basis of her complaint in Alywahby II. (See 56.1 Statement ¶¶ 43-46.) In March 2003, Alywahby again contacted an EEOC counselor, and filed another formal EEOC complaint in April 2003. (See Burton Decl. ¶ 13 & Ex. F.) She asserted various acts of retaliation for her prior EEOC activity and of discrimination based upon her age, race, color, national origin and religion. (See id., Exs. F, G.) Her claims were denied administratively, and she subsequently asserted these claims in Alywahby III. (See 56.1 Statement ¶¶ 47-53.)

Plaintiff brought Alywahby I and Alywahby II in 2001. The docket sheet reveals that, following discovery, the parties proceeded directly to the filing of a proposed joint pre-trial order. (See Alywahby I, Docket Entries ## 14, 22, 34; Alywahby II, Docket Entry # 31.) Following this pre-trial order, the court allowed Plaintiff thirty days to file Alywahby III, after which consolidation of all three cases would be considered. (See Alywahby I, Minute Entry

---

[3] Defendant does not describe the prior EEOC activity to which Plaintiff's first retaliation claim relates. In Plaintiff's submission, however, she refers to the earlier EEOC complaint of substantive discrimination. (See Pl. Opp. 6; see also Plaintiff's Response to Defendant's 56.1 Statement ("56.1 Response") ¶ 40 (indicating the Plaintiff's first EEOC complaint was for racial discrimination).) Moreover, her EEOC complaint specifically mentions a prior EEOC complaint. (Burton Decl. Ex. A.)

3

dated Apr. 28, 2004 (Docket Entry # 35); Alywahby II, Minute Entry dated Apr. 28, 2004 (Docket Entry # 33).) Plaintiff then filed the complaint in Alywahby III which the court consolidated with the two prior cases. (See Alywahby I, Order dated Sept. 16, 2005; Alywahby II, Order dated Sept. 16, 2005.) The parties submitted a proposed joint pre-trial order for all three cases. (See Alywahby I, Docket Entry # 53; Alywahby II, Docket Entry # 46; Alywahby III, Docket Entry # 27.) The cases were referred for mediation, which was not successful. (See Alywahby I, Docket Entries ## 54-58.)

On October 16, 2008, Defendant filed a letter with the court arguing that most of the discriminatory or retaliatory incidents alleged by Plaintiff could not be considered "adverse action" as a matter of law. (See Letter (Docket Entry # 61).) He indicated that he would submit a motion for partial summary judgment on this issue. (See id. at 2 n.1.) This submission, according to Defendant, would "prune" down the issues for trial. (See Transcript dated Oct. 17, 2008, at 3.) The court set a briefing schedule, and the parties briefed the motion. (See Docket Entries ## 63-73, 78, 82-86.) In this Motion, Defendant argues that eleven of the actions that Plaintiff relies upon in support of her claims cannot be considered "adverse." He seeks partial summary judgment with respect to these actions.

## II. LEGAL FRAMEWORK

### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986)). In considering a motion for summary judgment, the court is required to "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." Trammell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003).

"The party moving for summary judgment is initially responsible for demonstrating the absence of a genuine issue of material fact." Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008). The onus then "shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of the claim," and to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Id. (internal quotation marks omitted). "Even in the discrimination context . . . , a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Id.

### B. Employment Discrimination Standard

Plaintiff asserts claims of employment discrimination on the basis of race, color, gender, age, and retaliation for filing an EEOC complaint. These claims are governed by the familiar burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under that framework, the plaintiff must first establish a prima facie case of discrimination. With respect to claims of race, color and gender discrimination, the plaintiff must show: "(1) that [she] belonged to a protected class; (2) that [she] was qualified for the position he held; (3) that [she] suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Holcomb, 521 F.3d at 138. To establish a prima facie case of age discrimination, a plaintiff must show (1) "membership in the protected age group [i.e., over forty]," (2) "qualifications for the jobs at issue," (3) "an adverse employment action," and that (4) "the adverse action occurred under circumstances giving rise to an inference of discrimination."

D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 195 (2d Cir. 2007). Finally, with respect to retaliation claims, a plaintiff must show that "(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." Raniola v. Bratton, 243 F.3d 610, 624 (2d Cir. 2001).

Summary judgment is appropriate when a plaintiff is unable to establish a disputed issue of fact with respect to an essential element of her claim. Cameron v. Community Aid For Retarded Children, Inc., 335 F.3d 60, 63 (2d. Cir. 2003). An adverse employment action is an essential element of Alywahby's prima facie claims. See Hargett v. New York City Transit Authority, 640 F. Supp. 2d 450, 474 (S.D.N.Y. 2009). Defendant's Motion for Summary Judgment is premised solely on the absence of this required element—he argues that eleven of the "adverse" actions identified by Alywahby, are insufficient as a matter of law to support a prima facie case of either retaliation or substantive discrimination. (See Memorandum of Law in Support of Defendant's Motion for Partial Summary Judgment (Docket Entry # 65) ("Def. Mem.") 8-17.)

### C. Adverse Employment Action

Plaintiff's Complaints asserts claims of substantive discrimination (based on race, color, gender and age), and also claims for retaliation (based on prior EEOC activity). To make out a prima facie case for either type of claim, Plaintiff's must show that an adverse action was taken against her. What constitutes an adverse action, however, is different in these two contexts. In claims of substantive discrimination under Title VII or the ADEA, "[a] plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and

conditions of employment." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).[4] By contrast, "[t]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington Northern and Santa Fe R.R. Co. v. White, 548 U.S. 53, 64 (2006). To establish adverse action in a retaliation case, a plaintiff must show only that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (internal quotation marks omitted).

## III. DISCUSSION

Defendant asserts that none the challenged actions in Alywahby I and Alywahby II constitute "adverse" actions under Title VII or the ADEA. He therefore asks the court to grant summary judgment and dismiss those cases. Defendant also asserts that three of the actions in Alywahby III are insufficiently material to be adverse, and that the court should grant partial summary judgment on those actions. For the reasons that follow, the court concludes that some of the actions relied upon by Plaintiff are deficient as a matter of law, but that others are not.[5]

---

[4] "An adverse employment action, for purposes of both the ADEA and Title VII, is more disruptive than a mere inconvenience or an alteration of job responsibilities and can include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Leibowitz v. Cornell University, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks and alterations omitted).

[5] In her submissions in the Consolidated Joint Pretrial Order, Plaintiff only mentions race and age discrimination as substantive bases for her claim. (See Joint Pretrial Order 2-5.) While she provides some factual basis for her race discrimination claims, she does not provide factual support for her age discrimination claim. (See id. at 9-12.) The only attempt to support her age discrimination appears in the Pretrial Order submission in which she points out that two nurse practitioners were hired between 1998 and 2000, at least three years before the incidents she challenges with her age discrimination claims in Alywahby III. (See id. at 5.) Without sufficient factual support for her age discrimination claims, the court does not consider Plaintiff to be pursuing substantive age discrimination claims at this point in the litigation.

7

## A. Alywahby I

The adverse actions that Plaintiff asserts in Alywahby I are as follows: (1) on September 17, 1996, she was reprimanded by Dr. Boykin for failing to diagnose the fractured hip of an elderly patient; (2) on September 25, 1996, she learned that Dr. Boykin asked Dr. Mudgil to "write her up" in the hopes of having her fired; (3) on October 21, 1996, she received a performance rating of "Satisfactory"; and (4) on January 12, 1997, her duty hours and job assignment were altered. (See Joint Pretrial Order 3-5, 5-6; see also Compl. (Docket Entry # 2).) Plaintiff has alleged that these actions were taken in retaliation for prior EEOC activity.[6]

Under the standard for retaliation, three of the four actions identified in Alywahby I are insufficient to support a claim. A reasonable employee would not have found them materially adverse, nor would a reasonable employee have been dissuaded from engaging in EEOC activity on account of them. The court concludes, however, that the fourth incident cannot be considered insufficiently adverse as a matter of law.[7]

### 1. September 1996 Reprimand

The first adverse action Plaintiff identifies is a reprimand by Dr. Boykin in response to her failure to diagnose the fractured hip of an elderly patient. Such reprimands are routinely

---

[6] Plaintiff checked boxes in her complaint for "race" and "color," as a basis for her claims, in addition to retaliation. However, the underlying EEOC materials in Alywahby I refer only to retaliation. (See Burton Decl., Ex. A.) The same is true for Alywahby II. (See Burton Decl., Exs. C & D.) "[C]ourts lack jurisdiction over any claim that was not raised at the administrative level." Levesanos v. White, No. 01-CV-8687(SAS), 2002 WL 1202472, at *1 (S.D.N.Y. June 4, 2002). Moreover, in the Consolidated Joint Pretrial Order, Plaintiff includes only one of the eight actions from Alywahby I and Alywahby II among her claims based upon substantive discrimination. Accordingly, the court considers Alywahby I and Alywahby II to raise only retaliation claims. Moreover, Plaintiff has cited several incidents in the Pretrial Order that do not appear in any of her complaints. (See Joint Pretrial Order 2 ¶¶ 1, 2, 4; id. at 3-4 ¶¶ 8, 10.) Because these incidents do not appear in her complaints or the underlying EEOC materials attached thereto, the court does not consider these to form the basis of any of Plaintiff's claims.

[7] Defendant also asserts that Plaintiff did not make timely contact with an EEOC counselor with respect to two of the four actions. (Def. Mem. 13-14) Plaintiff made first contact on this issue on November 15, 1996, so actions occurring before October 1, 1996 (forty-five days prior) would be time-barred, unless subject to tolling. See 29 C.F.R. § 1614.105(a)(1) (requiring aggrieved employee to contact counselor within 45 days); Belgrave v. Pena, 254 F.3d 384, 386 (2d Cir. 2001). Because the court grants summary judgment with respect to those actions, it need not determine whether they were timely brought or whether tolling applies.

8

considered insufficiently material to constitute adverse action under Title VII. See, e.g., Lucenti v. Potter, 432 F. Supp. 2d 347, 364 (S.D.N.Y. 2006) ("Reprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions."); Nieves v. District Council 37, No. 04-CV-8181(RJS), 2009 WL 4281454, at *8 (S.D.N.Y. Nov. 24, 2009) ("Cases within the Second Circuit, interpreting Burlington, have held that performance warnings, without more, do not constitute a materially adverse action."). In this case, Dr. Boykin's reprimand was directed not only at Plaintiff, but also at the other physicians and nurse practitioners whose names appeared in the patient's chart as having had responsibility for that patient's care during the relevant period. (See Boykin Decl. ¶ 10.) He subsequently issued a "Report of Contact," documenting this reprimand. (Id.) The reprimand does not appear in Plaintiff's personnel file, however, nor was it a component of her 1996-1997 Proficiency Report. (See Burns Decl. ¶ 21 & Ex. T.) In this factual context, no reasonable employee would consider this reprimand to several people to have been materially adverse. See Scott v. Cellco P'ship, No. 98-CV-7245, 2007 WL 1051687, at *2 (S.D.N.Y. Apr. 3, 2007) (finding "general reprimands about plaintiff's lateness and other accusations, and alleged excessive scrutiny" to be insufficiently adverse for retaliation claim). Defendant's Motion for Partial Summary Judgment on this action is GRANTED.

2. October 1996 Incident

Plaintiff alleges that, in October 1996, Dr. Boykin asked Dr. Mudgil to "write her up" in hope of having her fired. (See Compl.) She asserts that Dr. Mudgil told an EEOC counselor that Dr. Boykin had "approached [Dr. Mudgil] to ask her to write me up and get me fired." (See Pl. Opp. 16 ¶ 11.) According to Dr. Boykin, Dr. Mudgil had complained to him about Plaintiff's work performance and he simply advised her to put the complaint in writing. (See Boykin Decl. ¶ 11.) Regardless of the precise circumstances of Dr. Boykin's instructions, Dr. Mudgil never

9

filed a written complaint, and Plaintiff identifies no other action relating to this incident. (See id.) No reasonable employee would consider Dr. Boykin's comments alone to have been materially adverse. Defendant's Motion for Partial Summary Judgment on this action is GRANTED.

### 3. Performance Rating

Plaintiff asserts that her performance evaluation in October 1996 was lower than she deserved. (See Compl.) That "Proficiency Report" covered the period from August 1995 through August 1996 and indicates that Plaintiff received an overall performance rating of "Satisfactory."[8] (See Burns Decl. ¶ 17 & Ex. S.) She also received a "Satisfactory" rating for Interpersonal Relationships and Nursing Practice. (Id.) Plaintiff does not point to any negative consequences resulting from this evaluation. A performance evaluation that is "Satisfactory," without more, is insufficient to constitute a material adverse action. See Dixon v. City of New York, No. 03-CV-343 (DLI)(VVP), 2008 WL 4453201, at *16 n.13 (E.D.N.Y. Sept. 30, 2008) ("[C]ourts have uniformly found, pre- and, significantly, post-[Burlington Northern], that negative evaluations, by themselves, do not constitute adverse employment actions for Title VII retaliation purposes[.]"); see also Boyd v. Presbyterian Hosp., 160 F. Supp. 2d 522, 537 (S.D.N.Y. 2001) ("Negative evaluations alone, without any accompanying adverse consequence are not adverse employment actions.") (internal quotation marks omitted). Accordingly, Defendant's Motion for Partial Summary Judgment on this action is GRANTED.

### 4. Change in Assignment

Plaintiff alleges that in January 1997, her duty hours and work assignment were changed. (See Compl.) According to Dr. Boykin, in late 1996, management at the St. Albans campus of

---

[8] Most of the comments on the Proficiency Report are not legible in the copy provided to the court.

the VAMC were required to "reassess staffing needs and placement." (Boykin Decl. ¶ 5.) Most of the part-time staff were laid off and all of the clinical staff were reassigned to some extent. (See id. ¶ 6.) Plaintiff was a part-time employee who was not laid off; instead, her schedule was modified to include rotations to an evening shift and medical coverage of different locations within the St. Albans campus. (See Boykin Decl. ¶ 7; Declaration of Shelia Britton (Docket Entry # 67) ("Britton Decl.") ¶¶ 5, 6.)

Depending on the circumstances, a change in assignments or duty hours can be considered a materially adverse action for discrimination or retaliation purposes. See Burlington Northern, 548 U.S. at 69 ("A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children."). "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Id. at 71; see also Kessler v. Westchester County Dept. of Social Sevs., 461 F.3d 199, 209 (2d Cir. 2006). Defendant argues only that Plaintiff's position and title remained the same, as did her salary and benefits. However, the Burlington Northern standard requires the court to look beyond these indicia of employment status.

According to Plaintiff, she was reassigned to night duties at a location where "security was a problem," where "no physician [was on the] grounds," "no Staff Nurses or Nursing Assistants," and where she was given new responsibilities, including dealing with medical emergencies and the health of VA employees and nursing home residents. (Pl. Opp. 18 ¶¶ 7-8, 20.) She also states that the needs of patients at this location were outside her abilities. (Id. at 20.) In other words, Plaintiff appears to be asserting that, following her EEOC complaint, she

was reassigned to a night-time position with more strenuous and demanding responsibilities, but with less staff support. Although Plaintiff does not offer record citations to support her assertions, they are consistent with Defendant's submissions, which show that Plaintiff was given a night shift and responsibility to cover "the outpatient clinic, the triage section, and the Domiciliary," a residence for homeless veterans. (See Boykin Decl. ¶¶ 3, 7; Britton Decl. ¶¶ 5, 6.) Defendant's briefing does not address these job changes, and the court declines to rule, as a matter of law, that they are insufficient as a matter of law to dissuade a reasonable employee from engaging in protected EEOC activity.[9]

Defendant has failed to show that, as a matter of law, the changes to Plaintiff's job responsibilities following her EEOC complaint were not materially adverse under the retaliation standard. On the record presented, whether those changes constituted adverse action that would dissuade a reasonable employee from participating in protected activity is a disputed issue of fact. Accordingly, Defendant's Motion for Partial Summary Judgment on this action is DENIED.

### B. Alywahby II

In Alywahby II, Plaintiff assert that, in response to a prior EEOC complaint, the following four actions were taken: (1) she received a "Satisfactory" performance rating; (2) she was denied a "position description" for her job as nurse practitioner; (3) she was denied requests for training in the care of patients with HIV infection and infectious disease; and (4) she was reassigned without being consulted. (See Joint Pretrial Order 3-5, 5-6; see also Alywahby II,

---

[9] To the extent that Defendant suggests that there is a non-retaliatory explanation for these changes, the court observes that he has only moved for partial summary judgment on the grounds that no adverse action has been shown. Accordingly, the court declines to consider this line of argument on this Motion.

Declaration of Kathleen Mahoney (Docket Entry # 61), Ex. B; Alywahby II, Compl. (Docket Entry # 2).)[10]

Under the retaliation standard, three of the four actions identified in Alywahby II are insufficient to support a claim. A reasonable employee would not have found them materially adverse, nor would a reasonable employee have been dissuaded from engaging in EEOC activity on account of them. The court concludes, however, that the fourth incident is not insufficient as a matter of law.

### 1. Performance Rating

Plaintiff asserts that the performance rating she received for the period from August 1997 through August 1998 was delivered late and was below her proficiency level. (See Alywahby II, Compl.) The evaluation was not signed by her supervisors until July 30, 1999 and August 9, 1999. (See Burns Decl. Ex. U.) In that evaluation, Plaintiff received a "Satisfactory" overall performance rating. (Id.) She also received a "Satisfactory" rating for Interpersonal Relationships and Nursing Practice. (Id.) Among other comments, the evaluation states that "Ms. Alywahby is an important member of the health care team." (Id.) There do not appear to be any negative remarks included in the evaluation. (Id.) As discussed above, there is no basis to conclude that this "Satisfactory" rating would be perceived by a reasonable employee to be a materially adverse action. Moreover, there is no reason to believe that the delay in issuing this evaluation was materially adverse. (See 56.1 Statement ¶¶ 6-8 (noting that Plaintiff continued to receive pay increases); Britton Decl. ¶ 11 (observing that Plaintiff and other employees did not

---

[10] In the Alywahby II Complaint, Plaintiff also added an incident in February 2000, in which she was "berated" by a Dr. Batholomew in front of bystanders, and subsequently accused via email of substandard care. She included the email exchange and it appears to be a heated discussion between medical professionals regarding the proper care of patients. No adverse action resulted, and, like the September 1996 reprimand, this incident does not constitute materially adverse action. See Lucenti, 432 F. Supp. 2d at 364.

13

timely receive their 1998 evaluations).) Defendant's Motion for Partial Summary Judgment on this action is GRANTED.

### 2. Position Description

Plaintiff asserts that, from February 1998 through August 1999, she requested a "position description" for her position as nurse practitioner, but did not receive one. (See Alywahby II, Compl.) Defendant asserts that Plaintiff was not given a "position description," because nurse practitioners do not have "positions descriptions;" rather, they have "functional statements." (See Britton Decl.¶ 7.) The "functional statements" for Nurse Practitioner Step III appear to match the position and title on Plaintiff's personnel forms. (Compare Burns Decl. Exs. M, N, O (description for Grade III Nurse Practitioner) with Burns Decl. Exs. G, H, I, J (personnel forms indicating Plaintiff is Grade III Nurse Practitioner).) Plaintiff was given her position's "functional statement" instead. (Id.)

Plaintiff agrees that she received this statement, but suggests that it did not fully describe her specific position. (See Pl. Opp. 8 ¶ 7, 3 ¶ 11.) She apparently claims that the form she received did not take into account important distinctions within the Nurse Practitioner position. Even assuming that she was provided with an incorrect variation of her Nurse Practitioner functional statement, this action is not sufficiently material to constitute an adverse action for retaliation purposes. On its own, her difficulty obtaining a more specific job description – when she was, in fact, provided one – is not the sort of action that would be considered materially adverse to a reasonable employee. Defendant's Motion for Partial Summary Judgment on this action is GRANTED.

### 3. Training Requests

Plaintiff asserts that, beginning in January 1998, her requests for training in primary care of patients with infectious disease and HIV were denied. (See Alywahby II, Compl.) According to Defendant, Plaintiff's supervisor approved "any requests for training that Plaintiff submitted to me, and I forwarded them to the training staff." (Britton Decl. ¶ 8.) The training staff would then determine whether funds would be expended for outside training. (Id.) Regarding HIV and infectious disease training, it appears that Plaintiff sought authorization to attend a one-day training course in April 1999. (See Def. Mem. 15; see also Britton Decl. Ex. B.) In response to this request, Plaintiff's supervisor "authorized Plaintiff to visit and observe at the VAMC-Brooklyn Infectious Disease Clinic." (Id. ¶ 9.) She also "referred Plaintiff to Vivian Adler, a Clinical Nurse Specialist who was a certified HIV counselor and staff educator on nursing practice in HIV patients." (Id.) Ms. Adler then sent a lengthy email to Plaintiff, in which she indicated that she was unfamiliar with the course Plaintiff requested, and, in any event, that a single course would not be the best way to stay abreast of "HIV management." (Id. Ex. B.) Ms. Adler provided a thorough list of "contacts and resources," as well as "advice on primary care of HIV patients" that could be helpful to Plaintiff. (Id. ¶ 9 & Ex. B (email exchange).)

Plaintiff provides no evidence to dispute Defendant's account. Rather, she merely asserts that she was unaware that she had been authorized to observe the VAMC Brooklyn Infectious Disease Clinic or that she would be provided with a list of resources and contacts.[11] (Pl. Opp. 4 ¶ 30.) However, the email exchange with Ms. Adler belies Plaintiff's assertion of ignorance as to these opportunities. And, although Plaintiff also states that she was told that Dr. Boykin blocked her request for training, she does not point to any evidence that this request was blocked. (Id.) Plaintiff's bare assertions, in the face of Defendant's contrary evidence, are insufficient to

---

[11] Plaintiff also agrees that the VA paid for her to attend two annual conferences relating to nursing in 1998 and 1999. (56.1 Statement ¶¶ 29, 31.)

15

support a materially adverse action with respect to training. See Holcomb, 521 F.3d at 137 ("a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment") Accordingly, Defendant's Motion for Partial Summary Judgment on this action is GRANTED.[12]

### 4. Change in Assignment

As mentioned above in connection with Alywahby I, Alywahby was reassigned in January 1997 to include rotations during an evening shift for coverage at the outpatient clinic, the triage section, and the Domiciliary. (See Boykin Decl. ¶ 7; Britton Decl. ¶ 5.) In Alywahby II, she challenges her subsequent reassignment to work at the Domiciliary. (See Alywahby II, Compl.) This change, effective February 17, 1998, reassigned Plaintiff to a schedule of five hours per day at the Domiciliary. (See Boykin Decl. ¶ 8; Britton Decl. ¶ 6.) She was scheduled to work Monday through Thursday from 8:00 a.m. through 1:30 p.m. (lunch included), and Friday from 8:00 a.m. through 12:00 noon (no lunch). (Britton Decl. ¶ 6 & Ex. A.) Plaintiff remained at that position through 2002, when she was transferred to the Extended Care Facility. (Boykin Decl. ¶ 9.)

As discussed above with respect to change in assignment in Alywahby I, Defendant only asserts that this action is not adverse as a matter of law because Plaintiff suffered no change in salary, benefits, position, or title. (See Def. Mem. 9-10.) The standard for assessing adverse action in retaliation cases, however, extends beyond these considerations. See Spector v. Board of Trustees, 316 F. App'x 18, 20 (2d Cir. Mar. 18, 2009) ("The challenged action need not affect the terms and conditions of employment in order to constitute unlawful retaliation."). Plaintiff was transferred to an assignment which, she claims, was outside of her proficiencies as a nurse,

---

[12] Defendant also asserts that Plaintiff did not make timely contact with an EEOC officer with respect to this action. (Def. Mem. 15.) Because the court grants summary judgment on this action, it does not address whether Plaintiff's assertion of this basis for relief was timely.

16

and for which staff support was diminished. The court cannot conclude that, as a matter of law, this reassignment would not have dissuaded a reasonable employee from engaging in protected activity. Defendant's Motion for Partial Summary Judgment on this action is DENIED.

### C.  Alywahby III

In Alywahby III, Plaintiff asserts that, on account of her race, color, age, gender – and in response to her prior EEOC activity – the following five actions were taken against her: (1) she was reprimanded by Dr. Boykin in March 2003; (2) she was formally reprimanded following notice and an opportunity to present evidence in June 2003; (3) her clinical privileges were withheld; (4) her clinical privileges were ultimately denied; (5) she was removed from her position as a nurse practitioner. (See Joint Pretrial Order 3-5, 5-6; Burton Decl. Ex. G, at 5; Alywahby III, Compl. (Docket Entry # 1).) Defendant moves for partial summary judgment on the March 2003 Report of Contact concerning her late completion of work, the formal reprimand, and the withholding of her clinical privileges. (See Def. Mem. 2.)

Under the standard for retaliation, the court finds the formal reprimand to be sufficient to state a claim, but that the Report of Contact and the withholding of clinical privileges to be insufficient.[13]

#### 1.  March 2003 "Reports of Contact"

On March 4, 2003, a Dr. Rao issued a "Report of Contact" about Plaintiff's "late completion of RAI/MDS work." (See 56.1 Statement ¶ 38.) According to Defendant, this work involves the "computer entry of patient data." (Def. Mem. 13.) This report was not placed in Plaintiff's personnel file. (56.1 Statement ¶ 39; Burns Decl. ¶ 21.) As with the Reports of

---

[13] Moreover, under the more demanding standard for an adverse employment action for substantive discrimination purposes, all of the three actions challenged by Defendant are insufficiently material and must be dismissed with respect to Plaintiff's claims of substantive discrimination. Defendant does not challenge actions four and five in this Motion.

17

Contact discussed above, this action is not sufficient to sustain a retaliation claim. Accordingly, Defendant's Motion for Partial Summary Judgment on this action is GRANTED.

    2.    <u>June 2003 Reprimand</u>

In March 2003, Karel Raneri-Vitale, RN, issued a notice of "Proposed Reprimand" to Plaintiff for failing to administer a shot to a patient when ordered to do so on three occasions. (<u>See</u> <u>Alywahby III</u>, Declaration of Karel Raneri-Vitale (Docket Entry # 39) ("Raneri-Vitale Decl."), Ex. B.) Plaintiff was given two weeks to respond. (<u>Id.</u>) In June 2003, the Associate Director of Patient Services sent Plaintiff a letter confirming the reprimand for two of the three instances identified. (<u>See id.</u>, Ex. C.) The letter noted that "[a] copy of this reprimand will be placed in your Official Personnel Folder," and "may remain in your folder for 3 years or it may be withdrawn and destroyed after 6 months depending entirely on your future behavior or attitude." (<u>Id.</u>) The letter further stated that it "may be used in determining an appropriate penalty if further infractions occur." (<u>Id.</u>)

Unlike the "Reports of Contact" discussed above, the 2003 reprimand was made after consideration of "evidence" and following an opportunity for Plaintiff to respond. (<u>Id.</u>, Ex. B.) The basis for the reprimand was "sustained," and a copy was placed in Plaintiff's personnel file. (<u>Id.</u>, Ex. C.) This formal reprimand constitutes an adverse action for the purposes of retaliation because, by its own terms, it may have "significant future consequences for employment." <u>Monclova v. City of New York</u>, No. CV-05-3164 (DGT), 2008 WL 822117, at *7 (E.D.N.Y. Mar. 26, 2008). A formal reprimand might dissuade a reasonable employee from taking protected action. Accordingly, Defendant's Motion for Partial Summary Judgment on this action is DENIED.

### 3. Deferral of Clinical Privileges

The New York Harbor Healthcare System ("VA Harbor Healthcare") encompasses facilities that were formerly known as the VA Medical Center-Brooklyn, including the St. Albans campus. (See Alywahby III, Declaration of Michael S. Simberkoff, M.D. (Docket Entry # 40) ("Simberkoff Decl.") ¶ 1.) In 2002, VA Harbor Healthcare required that all of its medical staff, including nurse practitioners, apply for "credentialing" and "privileging" to the "Professional Standard and Credentialing Board." (Id. ¶ 4.) Plaintiff applied for such credentialing in September 2002, but approval was deferred, apparently on account of an "Unsatisfactory" performance rating from a physician she worked with. (See id. ¶¶ 5-7.) She was given a chance to work with another physician to demonstrate that she could work "independently." (See id. ¶¶ 7-8.) The physician with whom she subsequently worked, however, was "unable to conclude that Ms. Alywahby [had] the requisite skills to function independently." (Id., Ex. A.) Plaintiff was ultimately denied privileges by the members of the credentialing board on May 22, 2003. (See id. ¶ 9.) She therefore began work as a "Diabetic Nurse Educator" in August 2003. (See 56.1 Statement ¶ 27.)

Defendant's position is that the deferral of a decision – from January 2003 through August 2003 – on whether Plaintiff would be given clinical privileges cannot be considered adverse. (See Def. Mem. 17.) During that period, according to Defendant, she continued to work as a Nurse Practitioner, thereby maintaining the status quo until her clinical privileges were ultimately denied. (See id.) There does not appear to be any dispute, however, that the eventual denial of clinical privileges was an adverse action. Accordingly, it appears that Defendant seeks to preclude reliance upon the deferral decision as an independent basis for a finding of retaliation. Because no negative consequences flowed from the deferral itself – as Plaintiff

19

retained her position during that time – the deferral would not provide an independent basis for a retaliation claim. Defendant's Motion for Partial Summary Judgment is GRANTED to that extent. Nevertheless, because the deferral decision may be intertwined with – or form part of – the eventual decision to deny privileges, the court's ruling does not preclude Plaintiff from offering evidence of the deferral to the extent it is relevant to the ultimate denial of privileges.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.[14] The remaining claims are as follows.

1. Alywahby was reassigned in January 1997 in retaliation for prior EEOC activity to an assignment involving increased and new areas of proficiency, but less staff support and less favorable working conditions.

2. Alywahby was reassigned in February 1998 in retaliation for prior EEOC activity to an assignment involving increased and new areas of proficiency, but less staff support and less favorable working conditions.

3. Alywahby was formally reprimanded in June 2003 in retaliation for prior EEOC activity.

4. Alywahby was denied clinical privileges in 2003 in retaliation for prior EEOC activity and on account of her race.

5. Alywahby was removed from her position as a nurse practitioner in retaliation for her prior EEOC activity and on account of her race.

The parties are directed to confer and to submit a letter to the court on the readiness of this case for trial no later than January 20, 2009.

SO ORDERED.

Dated: Brooklyn, New York
December 24, 2009

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge

---

[14] In reaching its conclusion on summary judgment, the court has considered not only the individual adverse actions alleged in Alywahby I, Alywahby II and Alywahby III, but also their cumulative impact. Even when individual actions, standing alone, cannot be considered adverse, their cumulative effect still can. See Spector, 316 F. App'x at 21 ("A pattern of retaliatory harassment could rise to the level of a Title VII violation in certain circumstances."). In this case, however, that the cumulative effect of the reprimands, performance evaluations, and other actions over several years do not rise to the "level that could be regarded as a materially adverse action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. Accordingly, trial will proceed only on the adverse actions authorized herein.

20